**In the Matter of CONSTRUCTION SUPPLY CORPORATION, Bankrupt.**
**No. 21309.**

United States District Court
E. D. Virginia,
Norfolk Division.
Aug. 22, 1963.

Steingold, Steingold & Chovitz, Norfolk, Va. (Eli S. Chovitz, Norfolk, Va.), for trustee.

WALTER E. HOFFMAN, Chief Judge.

Certain creditors, in a petition filed by their attorney, Cyrus A. Ansary, seek a review of the order of the Referee appointing Harold P. Juren as trustee in bankruptcy pursuant to an election by the creditors. In effect, the complaint is that the Referee failed to declare Ansary elected.

At the first meeting of creditors the Referee called for nominations for trustee. Juren was nominated by a representative of the following general creditors, with the amount of the claim as noted:

| | |
|---|---|
| Sitko Corporation | $ 754.22 |
| Philip Carey Mfg. Co. | 22,432.30 |
| Esau Goldberg Co. | 391.05 |
| Total | $23,577.57 |

Thereupon, the Referee inquired as to whether there were any further nominations. Ansary replied and identified himself as an attorney from Arlington, Virginia, approximately 200 miles distant from Norfolk, which was the place of business of the bankrupt and where the bankrupt's assets were to be administered. Nevertheless, Arlington is within the Eastern District of Virginia, although not in the Norfolk Division of said district. Ansary had filed claims in behalf of the following creditors in the amounts as noted:

| | |
|---|---|
| Rixson, Inc. (Illinois) | $ 275.33 |
| John L. Lindstrom Assoc. (Washington, D. C.) | 992.77 |
| Schlage Lock Co. (Illinois) | 7,792.33 |
| Lockwood Hdwe. Mfg. Co. (Mass.) | 7,228.29 |
| Glynn-Johnson Corp. (Illinois) | 3,180.86 |
| McKinney Mfg. Co. (Pa.) | 5,975.96 |
| Total | $25,445.54 |

Attached to each claim is a broad form power of attorney, obviously prepared by Ansary, with spaces to be completed by

Cyrus A. Ansary, Arlington, Va., for petitioning creditors.

the several creditors. Each power of attorney is directed to Ansary, authorizing him to attend meetings of creditors and, among other things, "to vote for a trustee or trustees of the estate of said bankrupt and for a committee of creditors." It thus appears that Ansary, acting under powers of attorney, could cast the votes of said creditors who, collectively, represented the largest in number and largest in amount. Ansary, after having stated the names of his clients, made the following statement:

"It is rather embarrassing for me to nominate myself, but my clients are scattered all over the country and no one could be available this morning, but I have been instructed to nominate myself as trustee."

An alleged creditor holding an unliquidated claim in the sum of $12,000.00 was not permitted to vote. Two other creditors were present at said meeting but had not filed their claims at that time and were not permitted to vote or file a claim for the purpose of voting.

The issue presented is whether, irrespective of the circumstances and residence or business location of the nominated trustee, the court must declare elected and then appoint the person receiving the majority in number and amount or, stated otherwise, does the court have any discretion in the premises if the action by the court is not arbitrary? As a corollary to the foregoing, a pertinent inquiry is whether an individual named as attorney-in-fact may "confer with himself" in deciding to elect himself as trustee. While Ansary stated that he had been instructed to "nominate myself," the powers of attorney do not include such an express authorization and no documentary evidence was presented to support such a statement.

■■■■ As desirous as it may be to elect a trustee conveniently located to the bankrupt's place of business or, secondarily, within ready reach of the court, the Bankruptcy Act imposes no such restrictions. 11 U.S.C.A. § 73; Bankruptcy Act, § 45; Petition of Safran, 1

Cir., 275 F. 819, reversing In re Jaffe, D.C.Mass., 272 F. 899; In re Flexible Conveyor Co., D.C., 156 F.Supp. 164. For these reasons, if any individual is "competent" to perform his duties and if he resides *or* has an office in the judicial district within which he is appointed, he is not disqualified from serving as trustee. The matter of the individual's competency is for the court to factually determine. This court agrees with the definition of the word "competent" as used in Graham-Brown Shoe Co. v. Holliday (In re Leader Mercantile Co.), 5 Cir., 36 F.2d 745, cert. den. 281 U.S. 760, 50 S.Ct. 411, 74 L.Ed. 1169, wherein the matter of creditor solicitation was considered in the light of competency. The individual selected need not be an attorney, In re Flexible Conveyor Co., supra, if he is otherwise competent to perform his duties.

We turn to the question of solicitation. We do not agree that the findings of the Referee carry with it an implication that Ansary solicited the claims he filed in behalf of the six creditors. The finding complained of reads as follows:

"That he actually solicited the clients which he has for their vote, or certainly had an active part in determining that he was to vote for himself, and the Court finds that it is highly unethical to attempt to elect himself Trustee in a bankruptcy matter."

If Ansary was not an attorney at law, the question of solicitation would be within the rule of In re Mayflower Hat Co., 2 Cir., 65 F.2d 330. There can, however, be little doubt that Ansary, as an attorney, solicited *votes* in his favor from Ansary as an attorney-in-fact. In effect, his right arm guided his left arm. The matter of solicitation of proxies or claims to obtain the election of a trustee is the subject of a variety of views and is discussed in Remington on Bankruptcy, Vol. 2, Sec. 1099, p. 554, and Collier on Bankruptcy, Vol. II, p. 1659. There is persuasive authority to the effect that such practice must be subjected to the closest scrutiny. In re Dalsimer & Co.,

(D.C.) 56 F.2d 644, In re Deena Woolen Mills, Inc., D.C., 114 F.Supp. 260. In the last cited case the court expressly disapproves of the practice of individuals voting for themselves as trustee. There is equally reputable authority to the contrary, including a statement that a creditor may nominate and vote for himself. In re Mayflower Hat Co., supra; In re Flexible Conveyor Co., supra; In re Lazoris, D.C., 120 F. 716; In re Van De Mark, D.C., 175 F. 287.

Prior to the enactment of the Chandler Act in 1938 the statute imposed upon the district courts the jurisdiction and power to, among other things, "pursuant to the recommendation of creditors, or when they neglect to recommend the appointment of trustees, appoint trustees, and upon complaints of creditors, remove trustees for cause upon hearings and after notices to them." 11 U.S.C.A. § 11(17). During this same period General Order 13 was in effect which read: "The appointment of a trustee by the creditors shall be subject to be approved or disapproved by the referee or by the judge; and he shall be removable by the judge only." General Order 13 was abrogated January 16, 1939, effective February 13, 1939, being no longer considered necessary in light of the provisions of 11 U.S.C.A. § 11, sub. a(17) creating courts of bankruptcy with jurisdiction to—

"(17) Approve the appointment of trustees by creditors or appoint trustees when creditors fail so to do; and, upon complaints of creditors or upon their own motion, remove for cause receivers or trustees upon hearing after notice."

██ Under the present record it is to be doubted whether the facts are sufficient to make any specific finding on the issue of solicitation. The practice of an attorney representing various creditors as an attorney-in-fact and thereafter nominating and electing himself as trustee is certainly obnoxious to our judicial system. Without express approval of such practice by Congress, or by a controlling decision rendered by the United States Supreme Court or the United States Court of Appeals for the Fourth Circuit, this court is reluctant to condone such a practice. The administration of bankruptcy must be kept free from fraud and machinations. To sanction the procedure now requested in the name of the creditors represented by Ansary, without additional facts, would operate as a mandate to all referees requiring them to approve any individual who receives the majority of votes in number and amount, provided only that the individual resides or has an office within the judicial district. It would, in the opinion of this court, defeat the purposes of the Bankruptcy Act and open the avenue to fraud, without in any manner suggesting that on this record Ansary was acting fraudulently. Congress, in providing for court approval of the appointment of trustees by creditors, did not see fit to tie the hands of the court to mere matters of maintaining a residence or office within the judicial district; nor did Congress forthwith declare that all attorneys are "competent." While the distance involved does not *per se* disqualify Ansary from serving as trustee, it may, nevertheless, touch upon his competency to fulfill all of the requirements of his duties as trustee. The same is true as to Ansary's status in voting for himself. It requires further investigation. The danger of a group of creditors seeking a factional advantage is apparent. Creditors having received preferential payments shortly prior to bankruptcy may decide to elect a "friendly" trustee; one selected by them to represent their interests and, although representing the general creditors after his appointment as trustee, may be reluctant to report any alleged preferential payment which involves his former client. Credit associations seeking to control the election of a trustee may have particular obligations to their members which may, in turn, conflict with the interests of general creditors. In short, while on this record Ansary was not *per se* disqualified from serving as trustee in view of the apparent con-

flict of authority as to the propriety of an attorney-in-fact voting for himself, the procedure is fraught with danger.

In approving the individuals who were eligible to cast votes at the first meeting of creditors, the Referee adopted the rule that any individual, not having actually filed a claim prior to the meeting, was ineligible to vote. This applies to claims of Frederick B. Hill & Company [1] in the sum of least $2300.00, and Hough Manufacturing Company relating to a claim listed in the bankrupt's schedules at $3766.97. If these creditors had been permitted to file their claims, the issue now presented may well have been moot. While it is well settled that only allowed claims may be counted in voting, there is manifestly no abuse of discretion in granting a recess to permit the formal filing of a proof of claim. Consistent with the necessity for a prompt administration of the assets, the Referee may postpone an election where there is serious doubt as to the status of claims. Remington on Bankruptcy, Vol. 2, Sec. 1076, p. 521–Sec. 1076.52, p. 525. This is an acceptable procedure where a controversy arises as to the validity of proxies or the right to vote claims which have been solicited.

■ The foregoing comments compel a remand to the Referee for further proceedings at the election of the creditors seeking this review. The record on review does not disclose the status of the bankrupt estate. If the creditors, as contrasted with Ansary who has no standing as an individual, are genuinely aggrieved by the appointment of Juren, they are entitled to be heard. However, without concluding that the Referee was in error, it is the creditors' rights which have allegedly been infringed upon—not any personal right of Ansary. The petition was filed on April 11, 1963. The status of the case may be such that, if the court should vacate the election of Juren as a nullity, another election would be a futile proceeding. The same question arose in Sloan's Furriers, Inc. v. Bradley, 6 Cir., 146 F.2d 757, 759, where it is said:

"The estate of the bankrupt has now been fully liquidated, its liabilities finally determined, and its assets converted into cash,—nothing remains to be done except a distribution of the fund to creditors. We are asked to set aside the election of the trustee, and so to adjudicate, as a nullity, everything that has so far been done by him, and to throw the matter open to another fight among creditors whose claims, as voted, have now been finally without contest allowed. This would seem to be an utterly futile proceeding. True, it is, that the vindication of a principle, so salutary as freedom of a trustee from bankrupt control, might impose upon a court of equity, an adjudication wholly futile in practical aspect, but it would have to be in a case where evasion is much more clearly demonstrated than here it is, in response to challenge whose bona fides are not suspect, and requiring no approval to an unseemly contest among lawyers for trustee representation."

See also: In re Flexible Conveyor Co., supra; Rule 61, Federal Rules of Civil Procedure, 28 U.S.C.A.

The matter will be remanded to the Referee for further proceedings consistent with this memorandum, same to be at the election of the creditors seeking this review, with the right granted to the Referee, after hearing and notice if required, to declare the office of trustee vacated and hold a new election.

---

1. This creditor was not listed in the schedules of the bankrupt.